The next case today is Francis X. Lange v. Douglas DeMoura, Appeal No. 20-1099. Attorney Greenberg, please introduce yourself onto the record. I'm Ruth Greenberg on behalf of Mr. Lange. Judge Kayaba, if it's all right with you, I'd like five minutes maybe for my case and then ten minutes for rebuttal. I know it's unusual. Yeah, why don't we do four minutes? We'll be fine. Thank you. Four minutes this way. Four minutes for rebuttal, yes. Okay, thank you, Judge. The reason that I split it that way is because my case in chief is simple. There's just a lot of distractors. This is a pretty straightforward application of Strickland, which requires only two things. One is that the performance of trial counsel be deficient and that the defendant be prejudiced thereby. The last reasoned judgment of the court in this case was Judge Lange's three-judge concurrence, and we're in agreement, the Commonwealth and I, on this. What's wrong with Judge Lange's three-judge opinion is that it adds stuff to Strickland. It makes the Strickland burden much higher than what Strickland makes it, and when it does that, it's beyond incremental. It's really wrong. What Judge Lange said here is basically that trial counsel's performance was deficient. I believe that that's owed some deference by this court of the fact-finding of the court below, but even if it weren't, it's pretty clear trial counsel's performance was deficient because this is a homicide case, and the issue was all about the defendant's state of mind and the defendant's intent. It's not, as my sister has argued, a case, an all-or-nothing case. It was all about what was the defendant's state of mind, what was his intent, did he have malice, and did the Commonwealth prove beyond a reasonable doubt the absence of provocation, the absence of excessive force. These things under Massachusetts law all have to do with the defendant's state of mind, and the jury cared in this case because this was brought both on a theory of filthy and atrocity and as a deliberate premeditation case, and the jury found on the evidence presented that the defendant did not deliberately premeditate. So you can have cruel and atrocious murder satisfy the requirements of filthy and atrocity in Massachusetts. Now, this case compared to the ordinary case, it's not a foregone conclusion that at the end of that investigation, that evidence will get to the jury because the counsel then has to make a choice, now knowing what I know about the investigation, if I did it right, would it make sense to present that evidence to the jury or not, given that I'm thinking there's a pretty good self-defense argument, which if I went on, he doesn't go to jail at all. And an argument that would relate to his mental state, arguably, you know, is in some tension with that because it's about a defense in which he would go to jail for some period of time. Now, wouldn't the prejudice question, since that judgment by the lawyer still has to be made, wouldn't it make sense to think of the prejudice question as, well, is it reasonably probable that faced with this evidence, the lawyer would have presented it to the jury, and yet when I look at the record, I don't see what indicates that the lawyer here would have done that. Well, what we do is we look at what the lawyer did, not what the lawyer said he would have done, because as Justice Lange pointed out, we're not looking at these things for the benefit of hindsight and self-justification. We say, what did the lawyer do? And what the lawyer did here is he presented a mitigation defense. He argued that the defendant was impaired by alcohol. He argued progress in manslaughter, which has a subjective and objective component. He argued mutual combat, which has a subjective and objective component. And he argued excessive force and self-defense, which also has to do with what the defendant actually perceives as well as what a reasonable person perceives. So you think at the prejudice stage, it's of no consequence that there's a discretionary judgment to be made, but we know that a lawyer has discretion in a non... I don't think it would be deficient performance if after the investigation that turned up this evidence, the lawyer still didn't put it on. Do you think it would be? It would depend on if that's the case and the argument the lawyer was making. Well, this case. This case with the evidence we have about what the investigation would have turned up. Would it have been deficient performance not to put that evidence to the jury? It would have been deficient performance not to consider working... I understand that. That's not my question. Would it have been deficient performance not to put this evidence before the jury? Yes, it would have been deficient. Now, let's just assume that I disagreed with you on that, okay? And I thought that would not be deficient performance. It would be deficient performance not to have done the investigation, but if I did the investigation and I learned this about the mental history and I had this evidence of self-defense with the evidence of alcohol, suppose I thought it would be a reasonable decision for a lawyer with that conjury of evidence to say, well, I'll go with some evidence about the drunkenness and I'll run my self-defense argument, but I'm not going to put forward evidence about the mental health issues because I don't want to open that box. If I thought that was a reasonable judgment, then why at the prejudice stage wouldn't I have to take account that a lawyer could make that reasonable judgment in trying to figure out whether it's reasonably probable that the failure to conduct the investigation resulted in prejudicial outcomes to the defendant? I have trouble seeing that. I understand your question, Judge. The way that this lawyer did this... Five minutes remaining. The way this lawyer presented this case and this argument, it was prejudicial to the defendant and deficient performance not to present evidence of this mental impairment. The mental impairment was so extreme. The evidence was, not just by our own expert, but by the 17-year history of mental health, that the defendant was unable to interpose thought before action. That his, as measured on standardized testing, he was the bottom one of a thousand people for self-control. That he was removed from his medication and wandered sleepless without meds that he had been taking for years. That he had been treated with Remeron, Seroquel, Depakol. Apparently, all of this was removed from him. And any reasonable lawyer presenting the argument that the man couldn't control himself because he was drunk would also... Can I ask you, if I understand Justice Lech, she was focused in significant parts, and maybe I'm misremembering it, on the statement from the petitioner that he didn't want to go to Bridgewater. And he didn't want a defense about his mental state. And he used specific words, which may matter. What's your answer on that towards the fact that he doesn't want to go to Bridgewater? And I guess the more he makes the case for his mental health problems being a cause of why he had diminished capacity, the more likely it is that he's going to end up in Bridgewater. Well, sort of beside the quality of that evidence for further discussion, there are many uses for mental health impairment defense which don't result in Bridgewater. Bridgewater in Massachusetts is where you go if you're found not guilty by lack of criminal responsibility. But it's not where you go if you're found guilty of provocation manslaughter where the subjective crime is satisfied by the fact that you perceive things in a different way or have a different reaction time or disability level of subjective provocation. You don't go to Bridgewater if they fail to prove you have the mental intent required for malice. Mental impairment goes to all the factors of cruelty and atrocity. Not arguing none of those things would result in a Bridgewater case. Last question. Is that your understanding that Justice Lank's opinion on prejudice is dependent entirely on what the petitioner's desire was about the use of that evidence? Yes. Yes. And so if we thought that was error, if we thought that was unusual, then what we would do, de novo review of the prejudice inquiry? Yes, because Judge Lank found no prejudice for two reasons. Most particularly, she found no prejudice because the defendant, through his counsel, that would be me, did not bind himself to a future course of action. And that's nowhere in Strickland. That's a post-Strickland original requirement, which is zero. And there's also no requirement in Strickland that a defendant agrees to do something that has to affirmatively prove that he would have used evidence which was omitted in the second time or even in the last time. If a reasonable lawyer would have used that evidence, that would have been a decision, as you say, that's up to the lawyer. It's not up to the defendant. If we could step back a second, I had thought that it was in the record that this was one of the most skilled and experienced criminal defense lawyers in the state of Massachusetts. And that he indicated based on his experience, this type of defense wasn't a good defense. That seems on its face to make some sense. Telling a jury a guy might have had a few more beers on some evening is one thing, but telling a jury that a person doesn't have impulse control can blow up on you in a case. So how do we conclude that a judgment that sounds like it was reasonable, which is there's no way I would have presented one of these defenses, how do we find that's just not true? I'm willing to credit Attorney Sheketoff, he's widely experienced, he's made this exact same mistake before, though, in Commonwealth v. Rubirio. It's not correct. It's deficient practice to say that in no instance will I present a mental health defense. Particularly where you're arguing mitigation. It's simply the fact that you don't like them. It's the same as a lawyer saying, I would never present DNA or I would never present alibi. These defenses exist as a matter of law. A lawyer can't simply remove 30% of his toolbox, particularly in a case where intent is exactly the same as the jury's questioning, where malice is the issue, where provocation is the issue. We can't say, I depart from that toolbox. When you look at the transcript of this case, and this is actually the only time in my experience the motion judge refused to look at the transcript. We have nine volumes of testimony and one witness supporting perfect self-defense. I guess I'm just confused how you think the analysis should proceed in the following sense. There's one form of deficient performance. It seems to have been recognized by the pre-judge opinion that the FJC, which was a failure to investigate. You're then saying there's a second level of deficient performance, which is post-investigation. If it turned up this evidence, it would be deficient not to use it. If you were otherwise putting it in its capacity evidence. Yes, you had my argument. Was that second level of deficient performance, was that a first-pronged Strickland point, or was that a prejudice Strickland point? It seems embedded in it is not your typical prejudice finding. That's a finding about deficient performance itself, about which the FJC never passed on it. I don't quite know how to think about how you do that on habeas. We split it into two parts, just like Strickland does. Clearly, we are all in agreement. At least the three-judge panel of the FJC was in agreement, and I don't think they're serious. That Bob Seketoff deciding, I don't do mental health defenses, so I'm not even going to look at this 18-year record with deficient performance. Second, we look at whether he was harmed by it. You're saying the predicate for finding that he was harmed is a second determination that it was deficient performance not to put it forward. Suppose we thought it wasn't deficient performance not to put it forward. If I had seen this evidence, knowing all the particularities of the case, I just decided I don't think I'll go forward. Is there still prejudice, or is the only way we can find prejudice is if we determine that judgment itself to be deficient performance? Yes. The harm is the failure to put it forward. The harm is the failure to make a reasonable decision whether or not to put it forward. That's the prejudice, which the SJC doesn't address, because the SJC is blocked by its failure to recognize that mental health evidence can be used to reduce and to mitigate without sending a defendant to bridge water. So the SJC doesn't address it, and also because it requires this weird promise that he's retried. So this court looks at the no vote on whether or not the defendant was prejudiced by the fact that Bob Shekishoff decided I don't ever do mental health evidence. Because it wasn't, and I'm going to go back to Judge Gallardo, that he said in this particular case, weighing and balancing, I'm not going to do it, looking at my client individually. Instead, what he said was, I don't do that. I don't look it up, and it wouldn't be. I'm sorry, Judge. It seems that she's frozen and perhaps has dropped out of the meeting. Thank you. Judge, what I'd like to do is I'd actually like to remove her from the meeting and see if I can reconnect with her before we begin. I think her time was just up as well. She timed it quite well, I think. Yeah. I'll see if I can get her back, Judge. Hang on. Attorney Greenberg, can you hear us? I can hear you. Yeah, you've been frozen for about a minute, minute and a half, and we couldn't hear you during that time. I'm sure it was my best minute, but I'll let the other side go, and I'll see if you're answering. Yes, I think you were just, Ms. Greenberg, I think you were just saying that Mr. Shekhartov saying he would never do it in any case was the problem. He didn't make an individual decision here. Yes. And had he made one, he would have used the seven. And any reasonable lawyer would have, making the argument that he did. Thank you. Thank you, Attorney Greenberg. You may mute your device at this time. And Attorney, I'm sorry, Attorney Granik, you may proceed. Please introduce yourself on the record. Good morning. May it please the court. This is then Attorney General Maria Granik for the respondent appellee. I would like to start with the prejudice prong discussion that my opponent began here. And I'd like to point out that, first of all, Justice Lenk's opinion on prejudice did not rest only on the idea that the petitioner was not willing to present mental health-based defenses. But it was also based on the view that even if he had agreed to present a lack of criminal responsibility defense or other type of mental health defense, it would not have been a substantial defense. And so there's no reasonable, as I'm quoting from the by-the-court opinion of the SJC, there's no reasonable basis for thinking the outcome of trial likely would have been different. So in that sense, Justice Lenk's opinion, which is the majority opinion here, and his own deference on habeas review under EPFA, is not unreasonable. Under EPFA, the petitioner must show far more than that the state court's decision was merely wrong or even an error. He must show that it's beyond any possibility of fair-minded disagreement. And here, the petitioner simply has not shown that. Justice Lenk's opinion on prejudice encompasses these different considerations, and it is not unreasonable. So more generally, this court should affirm the district court's denial. On that second theory of prejudice, how, given the evidence of his significant mental health issues, how could we say there's not a reasonable probability that the jury would have believed him? So, again, there can be at least fair-minded disagreement. It's reasonable to say… That's what I'm saying. How? Given that it doesn't have to be a dead certainty that the jury would have bought it. It just has to be a fair probability, a reasonable probability, that the jury would have been influenced by it. Under Strickland prejudice, and then we do it through the deferential lens, could one think that they wouldn't have… What would be the basis for thinking that, given how strong the evidence of his capacity was based on mental health, how would we have a reason to think a jury… I just don't follow. What would be the grounds for thinking… First of all, we have to keep in mind that there was a strong self-defense theory presented at trial, and that mental health evidence would have been inconsistent with that self-defense argument. We don't know which way that inconsistency would cut. In fact, the lawyer was worried the inconsistency would lead them, maybe, to buy the diminished capacity and not focus on self-defense. This would be the better defense for them, because he would get off entirely. So, I mean, that cut against themselves means that the jury would have not been moved by the diminished capacity. And that, I thought, was partly why the defense counsel didn't want to put it forward, because it would be inconsistent with self-defense, which was a more powerful defense. Counsel's decision to pursue the self-defense theory, which was supported by a witness and which was consistent with what his client was telling him had happened, was because he thought this was a stronger and more viable theory. And the petitioner has now shown that there's a substantial likelihood of a different result had the jury been weighing the mental health evidence instead of weighing the evidence of the altercation that occurred and what his client had done in responding, according to his own account of what had happened, to being attacked by multiple people, to being beaten. And counsel was focusing very strongly on this idea that his client had a reasonable apprehension of grave bodily harm and a reasonable belief that no other way of preventing the harm existed. And diminished capacity would have required him to most likely put expert opinion about his client's mental illness before the jury and potentially had undermined his credibility in making this argument that his client was, you know, a relatable person who wasn't what he perceived. But that's only if they would believe that evidence from the expert. But if they believe the evidence from the expert, that sort of suggests that maybe they'd find he had diminished capacity. So then I don't see how you can say the second theory of prejudice makes sense. That's what I'm having trouble with. As soon as they would have believed the defense experts, what would have happened was the jury would have been exposed to the opposing opinions of the prosecution's expert, who would argue that, in fact, the petitioner's behavior was rational, that he tried to walk away, that he knew what he was doing, that his mental illness did not prevent him from being able to walk away. He was able to act reasonably in that situation. And the petitioner just hasn't shown that having that conflicting evidence before the jury would have resulted in a net gain for him, which is what he has to show in order to demonstrate that the finding of no prejudice is unreasonable, again, under this doubly deferential standard. So even if you suppose that some jurists might believe that evidence of mental illness would have been helpful, and even that, I think, is an assumption that he hasn't shown necessarily is true. Because, again, we have very experienced defense counsel who is trying to weave this argument about his client having had a few drinks in order to kind of have this fallback position about the frailty of human nature and excessive force and self-defense. But he's not really arguing. He never argues to the jury that he was drunk to a point at which he was debilitated and could not understand what was happening. So he's very carefully telling the story and focusing the trial and focusing the jury in a particular way. What are we to make of the slightly different standard that Massachusetts uses than the Strickland standard? We have the three judges saying that the decision, the failure to investigate did not meet the standard for effective assistance of counsel. But as I understand it, that is different. The Massachusetts definition of effective assistance of counsel is different than the Strickland definition. It doesn't have to constitute conduct falling measurably below those of the ordinary fallible lawyer. That's correct. And that's one of the reasons why, if the score were to reach the performance strong of the Strickland claim at all, it should address it de novo. Because when the SJC finds deficiency, it finds it under the Massachusetts standard, which, as you point out, is more favorable to the defendant. And, therefore, we don't know whether they would have found deficiency under Strickland. And then related to that, I'm trying to get my mind around, how do you say that it's a deficiency not to investigate the mental state of a client further? And then turn around and also say that it's not deficient. We're going to deem it wasn't prejudicial because counsel wouldn't have presented it anyhow, no matter what it was. It seems to me, a lawyer who is legitimately saying, I'm not going to present this, no matter what it is, why would he investigate? Why would we say it's negligent to investigate, to fail you to investigate? I think the main point here is that it's a misrepresentation to say that the counsel's position was he wouldn't present it, no matter what, because he actually did make a strategic, and I would argue reasonable decision, that in this particular case, presenting it would undermine a strong self-defense that he was choosing to present. And he was, as has been mentioned before, very experienced and has presented mental health evidence in various contexts before in other cases. And he believed that here, he actually had a strong chance of winning, potentially winning an acquittal based on the self-defense theory. So he is not saying, I'm not going to present it, no matter what. He's saying, in this case, I understand there's some mental health history, but I'm not going to investigate it. And there's no duty to investigate in every case when there's a mental health history. So here, he could make a reasonable decision that made the investigation unnecessary, thus making his decision not to investigate negligent in performance, I would argue. How do we deal with the fact that if I read the three justice opinions, it doesn't address the diminished capacity point as such? I would say that it does address it, and this court is required to presume that it was adjudicated on the merits. Well, I understand the second part, but when I read the text of the opinion, there's no analysis that separately addresses diminished capacity in the way it addresses legal responsibility. There's no explicit analysis of the diminished capacity? Yes, there's five minutes remaining. So does that mean, in your view, we assume under Richter that it would have looked at the diminished... That seems strange to me, but I don't know how to... Do you see what I'm saying? In other words, we have an analysis of how they go about thinking about the Strickland failure to investigate and the prejudice question with respect to the legal responsibility argument. We have no similar analysis of how they would do it with respect to diminished capacity. Does that mean we apply Richter and we assume they would have done it the best way possible, or would it be more sensible to say they would have used the same type of logic that they just showed they would use with respect to legal responsibility? Well, I think you start with the idea that they reached the conclusion that having the mental health evidence in any form at trial would not have helped the petitioner, and you take that ultimate conclusion regarding prejudice as... But that doesn't consider diminished capacity. The other theory was the petitioner didn't want you to use the evidence, but that arguably doesn't address diminished capacity either. So with respect to what the prejudice analysis or the decision performance would look like as diminished capacity, it's a black box. We don't know what reasoning would have been used. So does that mean the SJC gets the benefit of Richter and we assume, well, they would have done it in the best way possible? It seems like an odd situation. They're so closely related. I think, first of all, you could also look at the petitioner's statement, which the SJC took to mean that he was not interested in pursuing mental health defenses as applying to both criminal responsibility and diminished capacity. And if you look at the statement, it's more clearly relating to Bridgewater, but it also says something like, I'm not a sick person. And it seems to evidence that he was just not interested in pursuing that type of argument. So I think you could apply that to diminished capacity. This is my question. Suppose we thought it's an error. It's an unreasonable application of Strickland to make the petitioner's own view of whether to make that defense with respect to diminished capacity relevant, which is what your opponent does. If we agree with that, since we don't have any indication of how the SJC actually analyzed the Strickland issue as the diminished capacity, do I assume that's how they would have done it? Or do I assume they would have done it the right way? I just don't know how to think about that. I would suggest you assume that they would have done it the right way, and you focus on the fact that they had this argument presented to them, both with respect to criminal responsibility and diminished capacity, and that they found that putting that evidence before the jury would not have made a difference, would not have positively affected how they evaluate the defense theory. So if there are no other questions, I will address them in our brief. Thank you. Thank you. At this time, Attorney Granik, if you could please mute your device, and Attorney Greenberg, I believe you have four minutes of rebuttal left. Can you see me? Yes. You can hear me. It'll take just a minute from me. I need it. The first thing that I want to talk about is the difference between what's a ruling and what's a dicta. What the SJC decided, and this goes to Judge Barron's question, what the SJC decided here is we're not going to look at prejudice, really, because we're going to say he decided he didn't want to go to Bridgewater, and he wouldn't promise in the future. That was the ruling of the three-judge panel. What my sister's talking about is footnote one from Judge Blank, which is dicta in a hypothetical, even if I were, then I might, or I could, me, I. That's not the court's opinion. That's a random thought following what the court decided. It's what the court might decide in a different situation, but didn't decide it here. Because what happened here is they didn't look at the prejudice, and therefore, there is no double deferential review. You're the first court to look at whether or not the defendant was harmed because his trial lawyer, who was already arguing provocation, speed of fashion, all those things that go to mental state, in a case that went to mental state, where the defendant, where the jury already found no intent, where you're going to look, and you're going to go back into Judge Barron's question again. How can a court say, on the evidence here, that there was no reasonable probability the verdict would have been altered if the expert had been believed? And then, you don't sit on whether or not this expert would have been believed. I mean, if you wanted to, you could. You could say, here's Judge, here's Dr. Spears, who does tests, and here's Dr. Walters, who communicates by telepathy. Which one? And you would say, Dr. Spears. But you wouldn't. You would say, that's a jury question. But what you have to acknowledge, and what you have to acknowledge is this isn't defense. This is a qualified witness. If this witness were to have been believed, the verdict would have been different. And there's no reason on this record for this court to sit as a second jury and say basically what Bob Seketoff does. These witnesses are never believed. You can't say that as a matter of law. Can I ask you the same Richter question? With respect to diminished capacity, which, yes, a free, justice opinion does not address in any kind of analysis, one possibility is we then say, well, you get the benefit of Richter then, because you didn't say anything about it. So we presume you did the strict analysis the way I suppose you were supposed to do it. And then we would just look at the facts and say, would they add up? But we do it with deference to that judgment. And I guess where I'm stuck is if I thought it was deficient performance not to do an investigation, it was then the question is, okay, now I've got this evidence before me. Would that have gone to a jury? And we have a counsel saying, you know, I wouldn't have used it. Even if I might be inclined to think that you are right, that if it was a de novo question, that still would be prejudicial. Wouldn't it be reasonable for a jurist, if we were giving deference at that level, to say, well, it's at least a reasonable view to say that, no, it wouldn't have gone to the jury because it would have been a strategic choice at that point not to put it forward. So in other words, Richter would suggest we owe some deference to that judgment, even if wrong. So does Richter apply there? Because if it does, that seems to make your case at the prejudice level quite difficult on diminished capacity. Richter, you mean, do you owe deference to the SJC on this question? Yeah, when they haven't explained themselves. And the answer is you don't. And they explain themselves in Blank's footnote one. Blank's opinion. May I answer, Judge Barrett? Yes, please. Thank you very much. It's critical to the case. What Justice Blank and the three-judge opinion did was say, we are not visiting prejudice because the defendant has disqualified himself by his statement to Judge Walters and by his refusal to reach, he has disqualified himself from relief without reaching prejudice. What I'm asking you, though, that statement pertains to their analysis of the legal responsibility defense. It doesn't address diminished capacity. So? So under Richter, we have silence with respect to diminished capacity. So am I supposed to assume they would use that same reasoning into their unexpressed holding as to diminished capacity? That's what's odd about the case. Yes, they used the same wrong reasoning to defeat the claim. How do I know that? How do I know that with respect to diminished capacity? That's my question. You know it from footnote one where the judge says there's no reasonable basis for thinking the outcome of the trial would have been different and the diluting effect of the defense. That's where. Does that footnote address diminished capacity? No. It says it would have been useless to offer this expert. I think that's right. Thank you, Miss Greenberg. Thank you. Thank you, court. That concludes the arguments in this case. Attorney Greenberg and Attorney Granik, you should disconnect from the hearing at this time.